The time has come for this Court to restore the Doctrine of Inequal Conduct to its proper origins grounded in Supreme Court precedent, a doctrine that applies only in egregious cases of fraud where the conduct that occurs caused the issuance of the patent. The Court can accomplish this by taking three steps. First, reaffirming the subjective intent standard laid out in Kingston. Second, by applying a materiality standard that requires causation and reliance. And third, by eliminating the balancing sliding scale step that often allows a high finding of materiality to infer intent. As to the first and third of these steps, there is significant agreement between the parties in the significant amicus briefs. As to the second, there is some agreement and some disagreement. Turning first to intent, just to touch on it, the subjective intent standard must be applied correctly. What currently happens often is knowledge of a reference in determination of materiality ten years later in a litigation and no excuse as to why I didn't give it or no recollection. That is not the way to determine subjective intent. Subjective intent requires that the person accused appreciated the importance of the information, basically looked at it and said this is important to the patent office, and then decided to hide it or misrepresent it in order to deceive the patent office to try to get a patent. That should be the inquiry for subjective intent. And I submit it should probably come first in the analysis of many of the cases, as opposed to second, as it often does. As to materiality, common law fraud, trademark fraud, copyright fraud, all require that the person who committed the act got the right because of the conduct. But for standard? Yes, Your Honor. But the real words are really more causation and reliance. Common law fraud, as the court recognized in Norton, requires misrepresentation, intent to harm no follower. That's right. If you step back and think what is this doctrine meant to do? Excuse me, Your Honor? Common law fraud does not, in fact, require but-for causation. The restatement is very clear, is it not, that you can have common law fraud if it's a substantial factor. It doesn't mean that the right was obtained. Yes, but let me read you from the restatement. It is not, however, necessary reliance on the truth of the fraudulent misrepresentation to be the sole or even the predominant or decisive factor in influencing his conduct. It is not even necessary that he could not have acted or refrained from acting as he did unless he had relied on the misrepresentation. Your Honor, in the fraud cases, the Supreme Court cases, we're not starting from a blank slate, keystone, hazel, and precision. Is that what I read wrong? No, no. I wouldn't challenge your reading of the restatement. But there is, if the reason what we're trying to do here is act in equity, to prevent somebody from gaining an advantage based on something he did that gave him a right that he would not ordinarily have gotten, it doesn't make sense to take away that right if what he did did not impact the decision. Well, impact and but-for causation aren't necessarily the same thing. The Supreme Court cases are also not consistent with the but-for causation. So, Your Honor, the characterization of the Supreme Court cases by the Supreme Court itself talks about procured by fraud. It lists them as three examples of procurement by fraud. That means the fraud caused the procurement. The fraud caused the getting of the patent where it would not ordinarily have gotten. The Supreme Court is characterized in that way. This Court is characterized in that way. But in hazel, the Supreme Court said this would still be fraud on the patent office even if what was in the affidavit was true. Ron? No, Your Honor. I mean, in hazel, the person basically lied about the significance of the importance of the invention. It was a fraud. I mean, it was a plagiarism, basically, where somebody wrote something about the importance of the invention and then said how great it was and had somebody else sign it who was the leader in the field. And they said it met insurmountable odds and based on that submission, the patent issue. And so there was a direct connection between the act and the actual conduct. What I think we get lost is the doctrine is not meant to punish and penalize. The doctrine is meant to not reward people that got something they shouldn't have gotten. In both those Supreme Court cases, didn't the Court clear patents unenforceable that weren't the subject of the fraud? They didn't just strike down the patents themselves that were an issue in the fraud. They struck down additional patents as well, right? I don't recall that. They talked about the actual patent issue and the cases were all about the individual patent, the lying or the perjury or whatever it was. And then later it was discovered and later those patents were struck down. And they weren't even close cases. They weren't cases of maintenance fees. They weren't cases of CVs. They weren't cases of related information in another... Speaking of close cases, what's the daylight between the standard you're asking for, whether it's but-for, causation, whatever you want to call it, and the one the Patent Office is advocating, the prima facie case of unpatentability? Well, the difference between... We didn't pick the standard. What we did is we said, look, we read the case law, we read procured by fraud, we see fraud at IP and we see this is what's required. I mean, it makes sense and that's how equity applies. The Patent Office has suggested now, even though it didn't when it procured the rule in 92, that we should look at Rule 56. And we disagree with that for several reasons. As to your particular question, they don't just propose D1. D1 is prima facie. Well, I ask you though, what's the problem with D1? Well, that's not what they proposed. So, what we suggested was a causation reliance, the examiner would have rejected it, is pretty close to D1. They proposed, at least in their brief, we'll hear from them today, all of 56. And D2 would swallow the whole. D2 would swallow D1. What wouldn't be? What prima facie thing wouldn't be inconsistent with an argument of patentability? And as some of the anarchists point out, D2 would basically be the reasonable examiner standard all over again. Any prior argument wasn't consistent with your argument of patentability. Any argument that wasn't consistent with your argument of patentability, and we just sweep in everything. So, you'd be satisfied with just D1? Well, I don't think the court should adopt D1 as a matter of law. There's no reason to do that. They don't have substantive rule-making authority. The Supreme Court wasn't looking at Rule 56. You could say, well, they could change it tomorrow, and then you'd be bound by it. They could also, by rule, deal with intent, which 56 has the word known in twice. Well, let's assume we don't adopt it as a rule that we're subject to complying with. Let's assume we just take the substance of D1 and adopt it as the judicial rule. So, I think, again, I wouldn't suggest the court adopt it because it's the rule. If the court agrees that causation is required and that the patent wouldn't have issued, or an examiner would have rejected it, those are pretty close. So, prima facie evidence of unpatentability is sufficient in your view? Well, I don't think, I mean, if the PTO came in and said we wanted a different slightly standard, I don't think that's what we're doing here. What we focused on is the case law and the other areas of IP and the Supreme Court cases that there was no question that these patents, the conduct, A, on the intent was really bad, and B, the patents wouldn't have issued or likely wouldn't have issued. Where do we get that from? Where in the Supreme Court cases does it say that? It seems to me they say that Precision and Hazel say the opposite. They're not saying that the patent would not have issued. They're saying this is information which should have been submitted to the patent office because it would have been relevant. So, in Precision, Your Honor, the patent issued to the wrong person. The person found out it was an interference. The person found out information and made the wrong person swear over the patent to them. Just like in the recent AMC case by this court where the inventor lied about who was the inventor, a patent would not have issued to that inventor. A claim would not have issued to that inventor. In Hazel, there was a rejection. Basically, an affidavit or an article came in and said, no, this is the greatest thing since sliced bread, and the guy didn't write it. He didn't believe it, and they allowed the patent. That's causation. But the court said it wouldn't have made any difference if what was in the affidavit was true. It didn't. I don't believe it did say that, Your Honor. It didn't? I believe it did. I think, to be fair, I don't think the Supreme Court in each of those three cases, they were focused more on the intent aspect. They were focused on... They used words like sordid, corrupt, rival. There wasn't a lot of back and forth, wait a second, this doesn't have this limitation, or this didn't have that limitation. It wasn't that type of an analysis. But there was so much evidence of inappropriateness of fraud that the patent went down. Then the courts characterized those cases as a procurement by fraud type case.  There was a section where the individual files an affidavit saying in effect that the invention was developed during the first year prior to the filing, but in fact afterwards it was proven that the affidavit was an error. It was wrong. Would you say that was inequitable conduct? Had that proper information, the wrong information, the invention... Would the patent not have issued if it had the proper information? If the invention was sold or used one year prior to the filing of the patent application, would that create a situation which inequitable conduct would apply? And the affidavit didn't say it was sold. That's right. And if it was known to the examiner, the examiner would have rejected it. Statutory rejection. Yes. So we limit all inequitable conduct to those types of actions? Well, you gave me one example. I didn't say limit. You said, is this an affidavit that the falsity of it caused the patent to issue and had the truth of it been known, the patent would not have issued. That is a single example of causation required of but-for. The person now has a patent that he can enforce on people that he would not have gotten had he told the truth. The point is, when people make minor mistakes or mistakes and the patent would have issued anyway, the public is not affected. I mean, the patent would have issued either way. If you want to punish them, if you want to disbar them, if you want to take steps against them, that's what you should do. But you should not use an equitable doctrine, which is not meant to do those things, to step in 10 years later and cause this type of penalty. Let's take it one step further. I attest by affidavit that I'm a small business and I apply for a small business exemption by a lower filing fee. That exemption also provides me with a lower maintenance fee. But it turns out that I don't have a small exemption, a small business. I'm a large business. Is that sufficient to establish a problem with the inequitable conduct? No. Is that inequitable conduct? No, it is not. Is that misrepresentation? No, it is not. I mean, it may be perjury, but it's not inequitable conduct. The patent would have issued anyway. You would have paid a different amount of money, but the patent would have issued. Well, who knows if the patent would have issued? If I couldn't afford the filing fee or the maintenance fee, the patent would not have been maintained or issued. No, I mean, it would be collateral. It wouldn't be the reason that, you know, if I tell an examiner that I'm a small entity or a large entity, it's not going to affect whether he grants the patent. So I lied to the patent office and it's acceptable? No, it is not acceptable. This is just not the doctrine to enforce it. Mr. Whalen, if applying your test, is a holding of invalidity a predicate to the finding of inequitable conduct? I don't think it's always preferential. I think often it will be. I think the easiest way to apply it would be determine whether or not the information that is issued really does invalidate the patent, and then if it does or doesn't. Counsel, don't you have to look at the preponderance of the evidence standard and the broadest reasonable possible construction since this is what the examiner would have rejected the patent as opposed to in an infringement suit when you have clear and convincing evidence and a single construction of the patent? Right. One would be subjective but for, one would be objective but for. Subjective being the first and objective being the second. And I don't think, unless we're going to get into the heads of the examiners and unless we're going to get into the heads of what they did or didn't do, I think the most practical way to apply it is through the type of validity inquiry that we do today. To the extent presumption of validity makes a difference. So are you saying it has to be by a clear and convincing evidence standard and it should be according to the single construction proposed by the district court as opposed to the broadest reasonable construction because that's what the examiner is looking at when he or she is deciding whether to allow the patent. Right. You could lower it to the preponderance and the presumption standard. If you do that, you would then be running two different invalidity analyses. And I think in a case where, again, where you have the intent, and one of the points I made earlier is when you find that people are really lying about stuff and it's a big deal of stuff, the applicant is going to have a lot less wiggle room of saying, well, wait a second, that was under preponderance as opposed to presumption of validity. You didn't see that being argued in the Supreme Court cases. They didn't really care. So a certain threshold level of this was egregious, this was inappropriate, and we're not going to let this occur. And again, I think by focusing on the intent aspect, it helps, but in answer to Judge Liz's question, AMC wasn't an invalidity question. It was an inventorship question. So it wouldn't always have to be that type of conduct, but it would be this inventor would not have gotten this claim or a claim because of his conduct. And it seems like the most efficient way to do it would be after validity is proven one way or the other. I guess there could be a slim case where it doesn't work that way. So you have to prove either that the patent was invalid or that the invention was made by somebody else. No, I have to prove that because of the conduct, this inventor would not have gotten a claim that he got because of the conduct. So that's a but-for test. The information he lied about was material to the grant. It caused the grant, it affected the grant, and had it been properly known, the grant wouldn't have occurred. But the Supreme Court really is not adopting a but-for test. Well... In any of their cases? Well, I think they did. I think that in the three cases, they didn't analyze the validity issue quite as closely as they did the intent issue. I mean, they didn't go through a claim construction analysis and a was-or-motivation type of analysis. But in precision, the wrong inventor got it. In Keystone, the brother had used the prior use, it was kind of your example, didn't come forward with it, and there wasn't an argument that it wasn't the embodiment of the invention, and then lied about it during the litigation. And then the third case, Hazel, rejection, rejection, here's the statement that this is OK, this is the greatest thing by a Nobel laureate type person, and it was allowed. So when the word but-for is used, it was directly related to and caused buggering. Well, accepting that is true, and the Supreme Court cases had those features, thus that was sufficient to render the patents unenforceable, is there anything in those cases that suggests it was necessary? Which is, of course, the question that's before us. Well, I think that when you have every Supreme Court case that has found a patent unenforceable, there was this type of conduct. And there's none on the other side that tells you something. I think also... Well, five. I mean, Walker Process describes them as fraudulent procurement cases, and if you take the one or four tire... If you get to five by counting the number of times they've been referred to... No, by counting Walker, which described them, and then talk about Corona Court Tire, which was an earlier case, but it's kind of the other side of the playing field. You have two end zones there, where the patents are wholly unenforceable, and there you had an affidavit along the lines of what Judge Garrison said that was wrong, possibly reckless, and it could have been sanctionable, but they said it really didn't make a difference because the grant would have happened anyway, and they said not only were they not going to take away the patent, they weren't even going to lower the presumption of validity. So, again, if you got it because of it, you shouldn't have gotten it, and we're not going to enforce it. If you did something less, you may be sanctionable, you may be disbarred, but the doctrine of equity, which is not meant to punish, which is not meant to do that, is not the doctrine to do that in. If you think of it the other way, I don't know why we all think patent lawyers don't tell the truth. The brief by the Eli Lilly lawyers that said we're honest people, we don't want to lie, we don't want to have the patent blow up, we don't want to get disbarred, is telling. People are presumed innocent until proven guilty. For some reason, we think patent attorneys are guilty until proven innocent. I was talking to a colleague recently. He has hundreds of cases on his docket at a given time. There's no way he could be from a knowledgeable photographic memory about what this is. In the three Supreme Court cases where they found it, it was really bad stuff, and they said we're not going to let you keep doing this. If you do something less than that, you may be sanctioned, you may be disbarred, but this isn't the doctrine to apply. Is there a role for the doctrine of inequitable conduct in enforcing the duty to disclose? By duty to disclose, do you mean Rule 56? I don't quite understand the question. Rule 56, yes. I think they're different. Put another way, the patent office obviously has an interest in having before it the best references so that the examination can be the most complete and accurate. Is there a role for the doctrine of inequitable conduct in encouraging, incentivizing, if you will, compliance with the patent office requirement to disclose prior art? I don't think they're synonymous, I don't think they're equal. I think obviously the doctrine of inequitable conduct would be the most egregious case where you did not give them something. But what has happened is the current doctrine, despite its efforts, has ruined the disclosure requirement. You read brief after brief that said because of this, we don't. Because of this, we don't tell you what's the most important stuff. And that's just the opposite of what we want to encourage. We want to encourage people to come forward, give decent stuff, talk about it. If this court asks me a question about what's the most relevant case on point or what does the case mean, I'm not fearful. Well, I'm slightly fearful, but I'm not fearful of being sanctioned. I will advocate and I will say. And right now, patent attorneys are so scared that they cause all this injury to the patent prosecution system and litigation system. Mr. Whalen, I'll save the rest of your time there. Ms. Prevance? Oh no, excuse me, I think Mr. Chen is going to go first. Thank you, Chief Judge Rayner. May it please the Court, the PTO greatly appreciates this opportunity to present its views on this very important case. Picking up where Mr. Whalen just left off, I'd say, first of all, we agree on the majority of things that Mr. Whalen is arguing about, which is the intent standard and the balancing need to be clarified and repaired. And we substantially agree with him on those positions. And materiality also needs to be clarified. And in terms of the materiality standard, our view is that to say those three Supreme Court cases called for a but-for standard is incorrect. Because 40 years of this Court's jurisprudence understood that the kinds of inequitable conduct that could render a patent unenforceable is broader than merely just but-for. Isn't Mr. Whalen correct, though, in the sense that under at least the current regime of things, applicants in an abundance of caution and of concern for a subsequent holding of inequitable conduct are, if anything, overloading the Patent Office with references many of which may be totally irrelevant and may obscure and not assist the Patent Office in examining the best priority? We agree, Judge Lynn, that that is the current situation that we're seeing essentially reference flooding. Because right now people don't understand what is the art they need to submit. They are in fear of the inequitable conduct standard but if this Court makes clear what the standard is for materiality and makes clear that the intent standard needs to be a high one that we're really talking about bad faith conduct we believe that specifically in terms of materiality adopting or following the criteria set out in our current Rule 56 that's going to give the definiteness and the more peace of mind for applicants to understand what is the art that they should be submitting. In our view, the current Rule 56 sets forth a much more focused, definite, and tailored set of criteria that really gives applicants understanding of what is the kind of information we must need. What about the but-for test that Mr. Whalen was advocating? Would that, in your view, bolster the ability of the Patent Office to proceed as it should or would that undermine its ability? In the end, in our view, but-for or the reasonable examiner standard, they're both sub-optimal for different reasons. Reasonable examiner because it's deluging us in pathological over-compliance. But-for, the problem with that is that is permitting a certain scope of gamesmanship and mischief where people are allowed to hide the ball from the examiner on important pieces of information. When you take a particular position on a patentability issue in front of the examiner, that's a pivot point. And when you then learn of information that undermines that patentability position you have taken, then that's the kind of information an examiner needs in order to make a fully informed decision. The basic choice here is, if you go with a but-for, the choice is, do we want these informed decisions based on this information to be done ex-ante or ex-post? But-for standard would allow someone to lie, to affirmatively lie to the Patent Office about a piece of prior art and it wouldn't result in inequitable conduct unless you proved that the piece of prior art would have resulted in a rejection. And that's why we categorically disagree with the but-for test because the point of those three Supreme Court cases was when you come to the Patent Office and you're asking the government to grant you this very important property right that's going to permit you to exclude others from making and using that invention for up to 20 years, you have to act in equity. You cannot engage in some kind of gamesmanship or mischief. And you have to, in this ex-parte process, bring forward all those facts that an examiner needs to make an informed decision up front. But if it doesn't matter to the validity of the patent, the Patent Office still has the option of a disciplinary proceeding. In other words, bad behavior that doesn't matter to the patent can still be justified. Well, first of all, to break apart these two different kinds of patentability categories of information would be inconsistent with what this Court's jurisprudence has been. It's always been an understanding that it's broader than just but-for. We understand that. But at the same time, we think it would be inconsistent with the Supreme Court cases. If you look at Keystone, we don't see Keystone in saying that particular patent was invalid and not only was it invalid, but it should be barred from enforcement because of some form of inequitable conduct. It talked about possible prior use. A possible prior use that casts doubt on the validity of the patent. And that prior use needed to get to the examiner in the first instance. That's exactly the kind of information that 56B2 is looking for. If you have information that's inconsistent with the patentability positions you're taking that undermines that position, we need to get it first. We need to look at it first rather than hiding that, withholding that, and then letting a patent issue, and then letting the market get disrupted, and then forcing litigators to go through 10 years of litigation only at the end, where ex post, we finally decide whether that patent would have stood up or not in front of the PTO in the first instance. As a matter of policy, it's not in the public interest to go through all of that ordeal when there's an opportunity to decide that up in the very first instance. That's the whole point of acting in equity in front of the patent office. There's a public interest at stake here. It's not just a private party versus a private party. They're going to have to defraud another. I'm concerned that 56B2 will swallow the rule. If I understand Mr. Wheelan's position, it is that if you adopt 56B2, there will be no decrease in the flooding. You said that if you tweak the intent standard, maybe that might have some effect. Isn't 56B2 exactly what the law pretty much is right now? You're in this situation where you're admitting that people are dumping on the office. Right now, the world we're living in is the reasonable examiner standard. I submit that people don't know really the full scope of the reasonable examiner standard. It's unpredictable in its application. They don't know what a given district court judge is going to understand what their personal conception of that is going to be. 56B2, however, is much more specific. As I mentioned before, now we're talking about a pivot point where you've taken a stand in front of the examiner on a particular position with respect to patentability. Now, not only that, you know of information that undermines that position, that's either contrary or inconsistent with it. To understand the scope of Rule 56B2, which I'm having some difficulty with, tell me how you would apply it in the following scenario. You have a representation made by an applicant through an expert declaration or otherwise with respect to a question of underlying science. There is a tiny sliver of scientific opinion that is contrary to the position you are giving to the examiner, but it's not the position that's widely held. Are you obliged to call to the examiner that sliver of opposing view on the theory that is inconsistent with the argument that you're making with respect ultimately to patentability? Assuming all of that factual statement is relating to a patentability question, yes, that would fit within B2, because at this point in terms of understanding this ex parte process, we're trying to give the PTO the chance to make that fully informed decision. Now, it may be just a minority view, as you pointed out, and that can be expressed in the remarks by the applicant when they're trying to compare off the majority and minority view. There's another aspect of the public interest, which is the aspect that I think has brought us here today, and that is that we know that inequitable conduct now is being played in a very large number of cases, about a third of those that are filed in the district court. We know that it's sustained in very small numbers of those cases. We know that the litigation burden is profound, that there are many entities, many small entities that just cannot afford to go through those doors that are being opened in order to defend themselves. We know all of the additional consequences, the briefs are full of them. And we know that that is what has happened based on the present state of the law. There seems to be no reason why that would be discontinued, whether it's B1 or B2 or a number of the other things. My question is, isn't this aspect of the public interest the weight of the patent system to perhaps discouragement of worthwhile inventions? Shouldn't the office also be considering this policy aspect as well as the things that the examiner needs, and it should not be We recognize that there is that plague out in the litigation, but in our view So how are you resolving it? The way we tried to resolve it was going back 20 years ago. In fact, if you look at our Federal Register notice back in 91 and 92 one of the goals of making a clearer standard on materiality was to hopefully minimize the burden of At that time, we were hearing the same kind of complaints that we're hearing today, which is people just feel like the reasonable examiner standard is too unpredictable. Are you saying a return to with its negation of gross negligence? Absolutely. Yes. Driving up the intent standard because what we're really talking about is bad faith misconduct, and that has to be proven by the single most reasonable inference. And so when you make that clear to the courts and hopefully exergence can also help in terms of ratcheting up the pleading requirements for alleging this kind of defense along with a very clear standard of what is the kind of information we need in order for you to fulfill your duty of candor to fulfill your duty to act in equity in front of the government those pieces together we feel like improve the system. Mr. Batke and I are splitting time and we also have tried to split the substance somewhat. With the court's permission, I'm going to focus on the materiality issues and Mr. Batke will focus on intent and also address how various proposals might apply to the facts of this specific case. With respect to materiality, let me first say with respect to Judge Newman's question about the plague on the system, I think that all the parties in the things they agree on are proposing things that will tighten up the system and will help because the current Rule 56 is clearly narrower than the reasonable agenda standard and because all parties are proposing that there should have I think it is notable that Abbott ignores this court's recent decision in Exergence that the plague here is not the number of times that judges actually strike down patents for inequitable conduct and this court affirms. That's a very tiny number. It's four in the last two years in all the pieces of patent litigation  The plague here is not the number of times The plague is how many times it's fled. That's what this court addressed in Exergence. It's quite recent and we haven't had time to see yet whether it works but it should work because the point of Exergence is unless there's a real something there that impresses a district court judge in your pleading, you can't maintain this aspect of litigation. Does the district court have tools to handle that like Rule 11? Absolutely. How often does Rule 11 apply? Well I think in the past it has not been applied very much in part because there wasn't a requirement that was enforced by the courts of specific pleading. Now there is because this court has given this report Specific pleading has always been in the Federal Rules of Civil Procedure It hasn't been enforced and Rule 11 hasn't been enforced So you're saying we don't need to change the requirements, just leave it the way it is and let the I'm saying you have changed the pleading requirements with Exergence in the view of many district courts and so now they are much tougher and that would help. I'm saying you should make Intent a tighter standard Everyone has proposed that. You should make the Materiality Rule a narrower standard by adopting Current Rule 56 I guess I'm just having trouble seeing daylight between Current Rule 56 and the Reasonable Examiner Standard Tell me exactly what subset of cases that right now are responsible for this The Reasonable Examiner Standard says to the applicant take any piece of information and ask yourself would a reasonable examiner want to see this That is a much broader standard than looking at Rule Current Rule 56 in B1 saying does this piece of information establish a crime of facial cases on patentability I don't think there is any question over B1. I don't hear a dispute between you all It's B2 that seems to be the real problem B2 says if you are advocating X but you know a piece of information that says not X you must submit that when you advocate X so that the examiner has full information The key here I think and the answer to a lot of the complaints that were made in the various amicus briefs from the Patent Bar Association and also some comments that were made back in 92 when Current Rule was adopted is The complaint is this will mean people have to scour records and go find things because they might be inconsistent That's absolutely not what the rule says The rule says if you know of something that is inconsistent with the position you're taking, you should submit it You don't have to go find it, but if you know of it you have to submit it It doesn't just have to be inconsistent with the position you're taking The rule says also if it's inconsistent with any opposition that you're giving to the patentability arguments the PTO is conquering My concern is that is such a broad and amorphous rule that it's going to swallow up everything But it's not, because it's either a position that you're advocating or a position that you're taking to receive something that the patent office is advocating In either case, it's a position that you are actively putting in a paper that you're submitting to the PTO and when you submit that paper, you have to say to yourself Do I know of anything, as I sit here right now that is contrary to what I'm saying and if I do, I should submit it Suppose the patent office rejects your claim as obvious and the patent office has cited a few references and you're going to argue to them that your claims are not obvious Well, then don't you have a duty under this rule to give the patent office anything at all anything at all that you can think of that arguably favors an obvious determination and wouldn't you cast your net as a prosecutor quite broadly to ensure that you're not later going to be found guilty of inequitable conduct for not proffering it I don't know of anyone who has ever suggested that broad apart from an article saying Oh my gosh, fair offense, let's go change the law I don't know of any court that has ever suggested that broad reading of Rule 5262 and I think one way that you can it's the specific position you actually put in your paper you have to make sure it's not incomplete because you've omitted something that you know about that refutes it and one of the things I think that this court can ask itself is Do we really have a plague of Rule 526B2 cases? Let's think about our own opinions We don't have that many 526B2 opinions There is no Rule 526B2 plague That's not what your opinions are generally about So I think you just need to say to yourself Have people in fact been inundating courts with Rule 526B2 allegations Well couldn't that well be because everybody is dumping on the PTO as Mr. Chen acknowledged I think the issue is not the problem for this court is is the allegation, the accusation made too often and is that driving bad behavior The Rule 526B2 allegation is not made very often and you haven't seen it very often I have the same concern as Judge Moore about the scope of 526B2 and since you say that courts haven't and are not likely to apply it with the breadth that her example brought out, can you give us an articulation a formula of what your view of a Rule 526B2 or something equivalent that we should adopt would be that would exclude the category of cases that Judge Moore set forth In other words, what do you conceive of as the appropriate scope of that portion of the Rule if we were to adopt it I think you would take the Rule very literally and it says when you are taking a position or you are refuting a position if you know of information inconsistent with what you are citing you must submit it and in Judge Moore's example the big picture legal label for the issue was obviousness but the specific issue in any particular prosecution is going to be an office action has been sent to the applicant and the office action says you reject your claims under Section 103 and it's because of Reference A in combination with Reference B so now you have to come back and you are not going to address the law of all obviousness you are going to address Reference A in light of Reference B and when you make that argument why Reference A and Reference B together do not render your currently pending claims obvious if you say something in that argument either about what Reference A and Reference B mean or some other piece of information that you think helps you your submission needs to also acknowledge if you know of something inconsistent with what you are actually saying it's not the whole world of obviousness you are dealing with there it's the specific things you are saying in response to that office action so I think that the Rule is specific and I think it's specific to the things you are saying and I would like to take a crack at these Supreme Court cases because I do... Before you do that, just one specific question are you advocating that we adopt a standard of materiality akin to, if not identical to that set forth in current Rule 56 or that we adopt a rule that defers to whatever the Patent Office definition of materiality might be? Bayer is advocating that if the inequitable conduct allegation is that someone has failed to comply with their duty of disclosure to the PTO that the guidepost against which you measure their alleged failure be the PTO's Rule 56 in effect at the time that the supposed failure took place And the interpretation of that Rule is the interpretation given to it by the Patent Office? I think the Rule is the Rule as set forth by the Patent Office. There is some interpretation of the Rule in various NPEP sections which you could look to as helpful guidance perhaps but which is not binding on this Court. So what happens if next week the Patent Office adopts the reasonable examiner standard? If next week the Patent Office adopts the reasonable examiner standard and a week after that someone is doing something in prosecution and an allegation is later made in litigation that they failed to comply with the duty of candor. The duty of candor in effect at the time was Rule 56 in effect at the time. Now there are inequitable conduct allegations that are not by their nature you fail to comply with the Patent Office standard and then you wouldn't necessarily But here the nature of the allegations that you get almost 100% of the time are this person failed to comply with the duty of candor and I would submit that it is very very difficult for patent practitioners if this Court is judging their conduct after the fact by a different set of rules than the one that the PTO can require them to comply with in the moment because then the patent practitioner is trying to say I have to comply with the PTO's rule but also I'm going to try to comply with a different rule that the Court might impose on me at a later time if this patent is in litigation That's a very hard thing. Isn't all of this complexity a result of the fact that the doctrine of inequitable conduct has drifted into the realm of the Patent Office's duty to disclose and has drifted away from its roots in the Well I think yes but for a very different reason than Mr. Whalen puts out there Those cases do not stand for the proposition that the Supreme Court has laid down a law that patents are held unenforceable only if an act of fraud as it's put out in horror books with causation of reliance has taken place and that the patent would have issued otherwise In fact, in one of the cases that was clearly not the case and that's Keystone, the first case there were five patents that issued in that case the possible prior use, not even an adjudicated prior use a possible prior use was known to the applicant was not disclosed to PTO, was brought to the lawyer's attention before the litigation, was also not disclosed by them in litigation. In fact, they found the witness and said we'll pay you some money not to talk to anybody about it That affected one of the patents. Even in that patent it was not in any sense found to be the cause of the issuance of that one patent It didn't have anything to do with the other four The Supreme Court says unclean hand is going to bar all five because there is a link although it's not patent issuance there is a link between the bad behavior and all five patents since you brought the law firm and all five together and they all relate to an attack on infringement by a single machine, a stitch digging machine but there was no but-for causation even for the one patent that the actual prosecution was involved in and in fact it is absolutely the case in Hazel Atlas that the Supreme Court said this declaration, this article that was authored by someone different than the person who signed it Even if those facts were true that doesn't excuse the conduct because you pretended the wrong person wrote it I want to give you a hypothetical that illustrates the basic problem with the but-for rule If you combine the facts of Hazel Atlas in your Faring case where the declarants who looked independent didn't disclose the fact that they were either employees or paid by the company which was the applicant you have a declaration all the facts in it are true but the applicant wants to make it look as though it's independent so they pay someone who does not work for them they pay a scientist to pretend that they wrote it and they sign it and they submit a declaration they know to be false in the sense that the author is not the true author and has been paid to pretend they were in the course of prosecution that's the facts of those cases that is what all of us would call a false or fraudulent declaration at the time it's submitted, they're doing it because it's material to an issue it's a problem right then in the prosecution later the claims are amended for different reasons and when the claims issue the declaration no longer has anything to do with something in the court the conduct of the applicant was just as bad but under Mr. Whalen's proposed rule under Abbott's proposed rule nothing happens because this was a deliberate payment of somebody to pretend they were in something that they didn't, was submitted to the patent office for the purpose of gaining an advantage in prosecution in the end it didn't matter because something else happened in prosecution but Abbott says that's okay even though it was grossly culpable they don't say it's okay they say that the standard of fraud when you have a clear case of fraud there are remedies for fraud how would the patent office ever find out about this Abbott says the patent office should police this but the patent office doesn't have any kind of ability to police this how many people in the last 10 years have been disciplined by the patent office for making misrepresentations or lack of candor I cannot tell you, I'm not a patent practitioner myself but I would say that most of the time when facts like this turn up it's because they turn up in litigation not because the patent office has a way of finding out about them the reason I would suggest this court wants to make a return to the law of unclean hands as it is truly set out in the Supreme Court cases it's not that they say there's but for a causation of fraud they don't say anything like that although in some of the cases it was true the important part is that what those cases tell us is the doctrine here is unclean hands the important thing is how bad was the behavior of the applicant thank you Ms. Grevin Mr. Bakke Thank you Your Honor Bradford J. Bakke of Ropes and Rays for Beckman Dickinson and Nova Biomedical I think the problem just to pick up on the before issue I think the problem with the overdisclosure aside from clarifying the issue of intent is the inconsistency between the patent office standard and the standard that may be applied by this court in any given case and so for example if the count says the speed limit is 50 miles an hour and the court is enforcing 30 you're going to get overdisclosure if it says 80 is the enforcement level you're going to have underdisclosure and that's the problem with the but-for test the linchpin of our patent system is disclosure and we don't have an opposition system like they have in Europe and we depend on the duty of disclosure and the but-for test will as the patent office or as some of the amici briefs have indicated will cause or will permit people to lie to the patent office they'll be underdisclosure and all sorts of other issues so the but-for test doesn't really solve the problem and solving the problem is if we are more consistent in the standard that's applied between the patent office and the courts that will set out the rule for the practitioners and I am worried about the practitioners I'm worried about these accusations of inequitable conduct but I'm also worried about the public interest and we rely on this disclosure for a very strong patent system and that's why it's necessary one thing that Abbott points out is that they agree that by restoring Kingtown intent standard the court can mitigate the outbreak of inequitable conduct so it's two-fold if the court clarifies the intent standard and also makes the whatever the patent office is enforcing and if the court is consistent with the patent office that will also control the outbreak of these charges Do you agree with that? Do I agree with that? Yes Do you agree that a return to Kingtown would mitigate the problem? Well, by applying specific intent I do believe, Your Honor that will help specific intent is the single most reasonable influence Now I wanted to talk a little bit about intent This case, Mr. Whalen spoke about egregious cases This is one of those egregious cases the facts here are egregious and to not find inequitable conduct in this circumstance I think would mean that you can't find it in virtually any case The facts here were egregious We had a very strong motivation to deceive as Judge Ellison found there was a very strong commercial motivation to deceive Dr. Sanghira had actually helped draft the EPO papers There was strong knowledge of the materiality and in fact, these facts would actually fit the Budford standard It was reliance by the examiner The examiner allowed the case based on the submission of the declaration and it resulted in a patent So we actually would win, I submit, under the Budford standard Is there not ambiguity, however in terms of what the district court found with respect to intent in the facts of your case? I don't think so, Your Honor Judge Alsop found that there was deliberate withholding He found that they knew it was material and he found specific intent So I don't think that there's any ambiguity in what Judge Alsop decided with regard to intent Should we try to eliminate the tie-up of materiality with intent before we find intent? There seems to be in our case law a proposition that we find materiality and then weigh that before we find intent So if there's a very heavy materiality aspect then intent can be inferred Why not try to find intent specifically with a standard which could be clear and convincing evidence and then weigh the two together with an issue as to determine whether or not the materiality is there by clear and convincing evidence and the intent is there by clear and convincing evidence I don't think that would work because evidence of materiality also applies to intent In the Optium case, Judge Prost's concurrence indicates that you can if information is highly material that is evidence of intent There's materiality evidence that actually do apply to intent But aren't you inferring intent at that point Before you can establish it? No, it's evidence that you can use to establish intent along with other information such as knowledge of the reference knowledge of the materiality and so forth and if you add those up, motivation to deceive all of that information goes into the whole mix of how you establish intent and materiality is one thing So to separate materiality from intent I think is a mistake because as Judge Prost pointed out materiality does go to the intent consideration But can you infer intent directly from materiality? Not by itself You suggested that you could it seems to me a moment ago I didn't mean to say that If there is enough materiality you can infer intent That isn't what I meant to say It is evidence of intent but by itself you cannot establish intent There would have to be other evidence such as knowledge, motivation, whatever But that's one thing along the lines of the Optium case So you would agree that an intent would have to be established somewhat separately from materiality Even though materiality could be strong we shouldn't infer intent directly from materiality That's exactly right, Your Honor I'm also concerned about non-meritorious charges against prosecuting attorneys Something could be highly material but if the prosecuting attorney doesn't know of it doesn't appreciate it that is not a grounds for inevitable conduct So it's a high materiality or materiality along with some of this other evidence of intent But in this particular case there was plenty of intent evidence here Judge Alsop found and this was supported by experts in the case that the plain language was, as Judge Alsop found that this was inconsistent with what they were telling the U.S. Patent Office Judge Alsop also based his ruling on credibility findings He found Dr. Sanghira to be disingenuous I cross-examined Dr. Sanghira and impeached him several times Judge Alsop included that So there was lots of information here They were well aware of what was going on in the Patent Office They were well aware of why the Patent Office allowed the case This was all affirmed by the majority In fact the District Court took into account all possible inferences of good faith It was a very detailed, well-reasoned opinion They were both aware of the duty of candor Dr. Sanghira was involved in competitive analysis He was the link to the patent lawyer the technical link to the patent lawyer within the company He was aware that once he submitted that declaration that he then invoked the duty of candor So in this particular case the facts are very strong in favor of a finding of deceptive intent The other thing is that Judge Alsop found that the excuses were simply implausible In that regard there was a moving target on excuses from both Mr. Poe and Dr. Sanghira One of them was that the argument centered on the type of membrane not on whether it was optional Both the District Court and the majority found that not to be credible They argued that the information was cumulative Mr. Poe, it was a constantly changing series of excuses The District Court determined that it wasn't cumulative and in fact there was nothing else in the record that showed that these individuals had taken a different position in Europe than they had in the US This optionally but preferably language that was mere patent phraseology The majority panel found that there is no secret code, as Judge Alsop put it in terms of what the word preferably means Preferably means required And in fact the testimony from both Dr. Sanghira and Mr. Poe was that if you look at this language that was in the European disclosures the plain English of it, that is inconsistent with the positions that they were taking There was also testimony from Mr. Poe that he confused the words whole blood and live blood but in fact that was implausible as well because right within the EPO papers they defined live blood as being in vivo use That whole patent concerned the use of these blood glucose strips in blood That's what it was all about So within those papers they actually defined live blood as in vivo use So it was just implausible that Mr. Poe was confused about that And in any event, Dr. Sanghira was the scientist, he knew the difference Dr. Sanghira met with Mr. Poe both before and after the interview with the examiners They discussed disclosure This is not a case where some patent lawyer was just unaware forgot about the reference or anything of that nature There was a plan to withhold, they discussed whether they should disclose it and they decided not to So this is a very strong case for deceptive intent And in terms of materiality it fits within the V2 standard and I think that even if the court were to adopt a different standard, whether it's but-for on materiality or modify V2 then this type of information if this information was not required to be disclosed by the applicant then I think our whole patent system is going to suffer for that and we're going to end up with weaker patents So that's all I had on that Thank you, Mr. Batke Mr. Whalen, you have almost eight minutes Thank you, Your Honor First, as to Rule 56, there's been a lot of discussion about that Rule 56 has been in place for 20 years and when they passed it in 1992 the PTO stated these rules do not, quote do not define fraud or inactual conduct so it's almost surprising that they come forward 20 years later and say it does now Kingsdown is an en banc decision and has been in place and so has Rule 56 I would have thought they meant by that they're not getting into the intent element they're just talking about the duty to disclose No, it doesn't say that, Your Honor It says do not define fraud or inactual conduct They've never come forward before today, before this brief and said 56 should control, or should they have As Judge Lynn had suggested what the PTO wants is different than whether or not somebody who's infringing a patent gets away with it, or when somebody's infringing a patent doesn't have to pay because of some action The PTO has a sliding scale of penalties It can sanction somebody by reprimand How many sanctions have there been in the last 10 years? Well, OED brings cases against patent attorneys yearly So the point is, when they go after patent attorneys whether they make a minor mistake or a major mistake that's what the agency is supposed to be doing How many lack of candor sanctions have there been? But they haven't been using it necessarily because this is how we've been doing it It doesn't make it right The accused infringer here has the incentive to just accuse people of this There's no harm in doing it to them They get great discovery, they disqualify the attorney and even if they lose, they still get to call the patent people a liar Do you propose to say anything about the merits? Yes, I know that you're... So the merits, three points One, thank you for taking the time One, if the court changes the standard clarifies the King standard of the law and it should not be applied It cannot affirm, as Mr. Bakke wants The standard changes, it can't act as a court in equity in the first instance on appeal But counsel, this court found Dr. Sanghera and Mr. Pope both to be uncredible and found that they knew It seems to me while the court may have parroted the should have known standard in our initial articulation of what the standard should be what they actually made were fact findings  So it did two things, your honor The court has said it discussed the should have known standard So there, it didn't have to know he knew it just had to know he should have known And secondly, it applied the high materiality You can't disagree He found them to be uncredible He found they knew, they had actual knowledge So what do we do with that? So your honor, they had knowledge of what? They had knowledge of the EPO procedure There's no evidence, not a single piece of evidence that they had appreciated that this was material, important information and that we're not going to give this publicly required document to the PTO because we won't get a patent There's not a shred of evidence You've moved to materiality in your answer Focusing again on intent Isn't it the case that Judge Alsop did find a specific intent to deceive I don't think my answer went to materiality There was no evidence There was no evidence that Pope read those documents and said this is material we're not going to give it to the patent Focusing specifically on what Judge Alsop found The problem when you began your answer I thought where you were going is to say that Judge Alsop didn't apply the right standard with respect to intent He made reference to known or should have known and he made reference to the balancing standard He needed to apply the correct standard of intent and yet he does seem to have found specifically that there was a specific intent to deceive which would seem to make the other findings that he made harmless or superfluous The other findings led him to the conclusion of a specific intent to deceive using a different standard and what is articulated I can't do it better Judge Linden in his dissent explained where the disagreement really lied as to whether or not they had a good faith belief that this wasn't material and it wasn't material I encourage you to read the paragraph below They were talking about whether or not this was optionally but preferred in live blood and they then said this is optionally but preferred in live blood But he specifically disbelieved their explanation Disbelieved that they had no reason to believe that that was not material They thought it was cumulative and it was two years ago when they had read the information and they were talking about what types of membranes were being used and all that sentence does is paraphrase what was above them This whole case was about what that phrase meant This whole case, the intimidaty aspect of this case was about whether optionally but preferred in live blood meant it was required or not for whole blood It doesn't say whole blood The words aren't there They don't say whole blood It's all inferred And these people didn't believe that No, not at all Because the prior art was in front of the examiner and he allowed the patent This was a characterization of the prior art that neither this court nor the district court relied on to invalidate the patent But the issue down below was Whole blood doesn't require membranes What the doctor said was that single sentence does not change my understanding that membranes are needed for whole blood And if it did the sentence says preferred in live blood therefore that should be a teaching They admitted that the plain English meaning of that meant that it wasn't required This was a medical diagnostic system and everybody agrees that if you don't use a membrane for blood it's valid It may be less, but it's valid And that statement, preferred in live blood that would mean it's optional for live blood Today, there's not a single membrane used for live blood There's not a single system without a membrane It would be like I said I have a hybrid car that goes 30 miles per hour I prefer it goes 200 miles per hour And all of a sudden that's a teaching They didn't believe that was the teaching And if you go with the B2 standard which as some people have discussed basically swallows B1 You will have people looking for an unlimited amount of information And they will dig and dig and dig And they will find something that's inconsistent with an argument It wasn't even in the file It was in a European case two years ago about a piece of firewood And it seems like that should not occur We'd ask the court to reverse the finding of that wakanda and the resulting finding would be an exceptional case Thank you